UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| VICTOR LAMAR ENIS, | : Case No. 3:20-cv-280 |
| Plaintiff, | : |
| vs. | : Magistrate Judge Peter B. Silvain, Jr. |
| | : (by full consent of the parties) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : |
| Defendant. | : |

**DECISION AND ENTRY**

Plaintiff Victor Lamar Enis brings this case challenging the Social Security Administration's denial of his application for period of disability and Disability Insurance Benefits. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #14), the Commissioner's Memorandum in Opposition (Doc. #16), and the administrative record (Doc. #10).

I. **Background**

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1). The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing "substantial gainful activity." 42 U.S.C. § 423(d)(1)(A); *see Bowen,* 476 U.S. at 469-70.

In the present case, Plaintiff applied for benefits on April 13, 2017, alleging disability due to several impairments, including sickle cell anemia with chronic shortness of breath, deep vein

thrombosis, peripheral artery disease, hypercoagulation, and obesity.  After Plaintiff's application was denied initially and upon reconsideration, he requested and received a hearing before Administrative Law Judge (ALJ) Kevin Plunkett.  Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations.  *See* 20 C.F.R. § 404.1520.  He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment since December 7, 2016

Step 2: He has the severe impairments of sickle cell anemia with chronic shortness of breath, deep vein thrombosis, peripheral artery disease, hypercoagulation, and obesity.

Step 3: He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: His residual functional capacity, or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "sedentary work as defined in 20 CFR 404.1567(a) except as follows: [Plaintiff] can lift 10 pounds occasionally. [Plaintiff] can lift less than 10 pounds frequently. [Plaintiff] can sit for 6 hours, sit for 2 hours, and walk for 2 hours. [Plaintiff] can push or pull as much as he [can] lift or carry. [Plaintiff] can climb ramps and stairs occasionally. [Plaintiff] can never climb ladders, ropes, or scaffolds. [Plaintiff] can stoop, kneel, crouch, or crawl occasionally."

He is unable to perform any of his past relevant work.

Step 5: He could perform a significant number of jobs that exist in the national economy.

(Doc. #10-2, *PageID* #s 47-54).  Based on these findings, the ALJ concluded that Plaintiff was not under a benefits-qualifying disability.  *Id.* at 54.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #10-2, *PageID* #s 47-54), Plaintiff's Statement of Errors (Doc. #14), and the Commissioner's

Memorandum in Opposition (Doc. #16). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

### II. Standard of Review

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

### III. Discussion

In his Statement of Errors, Plaintiff alleges that the ALJ "incorrectly created and relied on a residual functional capacity [(RFC)] that produced relevant work while evaluating [Plaintiff] under prong five of the sequential process." (Doc. #14, *PageID* #607). Plaintiff alleges that ALJ Plunkett erred by failing to consider the opinion of Dr. Aivars Vitols, the medical consultative

3

examiner who diagnosed Plaintiff with sickle cell anemia, and how his opinion would affect the Plaintiff's RFC determination on the issue of absences and off-task behavior. *Id*. at 607-09. According to Plaintiff, the ALJ failed to account for Plaintiff's incapacitation during his frequent sickle cell crises, which, when considered in conjunction with the vocational expert's testimony, would produce work-preclusive limitations regarding absences and off-task behavior. *Id*. In response, the Commissioner points out that the ALJ's formulated RFC was more restrictive than any medical opinion of record and that his decision to exclude the work-preclusive limitations included in the hypothetical posed to the vocational expert is supported by substantial evidence. (Doc. #16, *PageID* #s 616-19).

During the hearing, ALJ Plunkett posed a series of hypotheticals to the vocational expert about the availability of jobs in the national economy for an individual with certain hypothetical limitations. (Doc. #10-2, *PageID* #88). After identifying jobs available in the national economy for an individual with the specified, hypothetical limitations, the vocational expert was asked about the tolerance for off-task behavior and absenteeism in the identified positions or other positions. *Id*. at 89. In response, the vocational expert indicated that, in addition to normal breaks, any off-task behavior exceeding ten percent would be work-preclusive. *Id*. at 89-90. Similarly, the vocational expert testified that Plaintiff would not be able to maintain gainful employment if he were absent more than one day a month. *Id*.

In assessing Plaintiff's RFC, ALJ Plunkett ultimately decided not to include either of the hypothetical limitations regarding absenteeism or off-task behavior. *See id*. at 50. Plaintiff contends that the failure to include these limitations in the RFC constitutes reversible error as he would have been found disabled had these limitations been included. (Doc. #14, *PageID* #s 607-09).

4

An individual's RFC is his "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis …." Soc. Sec. R. 96-8p, 1996 WL 374184, *2 (July 2, 1996).  The ALJ is responsible for assessing an individual's RFC.  20 C.F.R. § 404.1520(a)(4).  The ALJ's RFC assessment must be "based on all of the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements' -- *i.e.*, opinions about what the individual can still do despite his or her impairment(s) -- submitted by an individual's treating source or other acceptable medical sources."  Soc. Sec. R. 96-8p, 1996 WL 374184, *2 (footnote omitted).  Furthermore, in assessing a plaintiff's RFC, the ALJ is not required to incorporate every limitation included in the hypothetical questions posed to the vocational expert—rather, the ALJ need only incorporate the limitations he deems credible. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.") (internal citation omitted).

In this case, substantial evidence supports ALJ Plunkett's assessment of Plaintiff's RFC. ALJ Plunkett explained the treatment history of Plaintiff's sickle cell anemia along with his related symptoms, including the ulcers on his calves.  (Doc. #10-2, *PageID* #51).  He noted that Plaintiff has used folic acid and Percocet to treat his sickle cell anemia and that he uses ointments, pressured stockings, and medical bandaging to treat his ulcers.  *Id.* (citing Doc. #10-7, *PageID* #s 334, 351, 358, 360, 363, 396, 404, 430).  ALJ Plunkett thoroughly discussed Plaintiff's medical records for these impairments, including his August 2018 report that, despite some chronic bony pain, he had not experienced any recent pain crisis along with his February 2019 report that he had no recent

5

hospitalizations and was not taking his recommended folic acid. *Id*. (citing Doc. #10-7, *PageID* #537; Doc. #10-8).

Furthermore, the administrative record does not contain any medical opinion detailing how his sickle cell anemia impacts Plaintiff's functioning to the point that it would cause him to be off task more than ten percent of the day or be regularly absent more than one day a month. Instead, Plaintiff relies on his own reports to the medical consultative examiner, Dr. Vitol, to support his claim that these limitations should have been included in his RFC. (Doc. #14, *PageID* #s 607-08).

At his consultation with Dr. Vitols in July 2017, Plaintiff reported that he was diagnosed with sickle cell anemia and that he has "a long-standing history of severe sickle cell attacks that occur frequently and have been occurring with more frequency." (Doc. #10-7, *PageID* #321). Plaintiff stated that these attacks cause him to be "down" or "totally incapacitated and bedridden" for a period of up to two weeks and that he had been receiving treatment at that time by going to the emergency room. *Id*. at 321-322. Plaintiff also informed Dr. Vitols that he has frequent episodes of fatigue, leg swelling, and polyarthralgias, limiting his daily activity. *Id*. at 322.

Upon examination, Dr. Vitols found that Plaintiff presented positive for significant fatigue, exertional dyspnea, uncontrolled hypertension with a history of chest pain and a previous pulmonary embolus, weakness, and sickle cell anemia with cyclic sickle cell crises. *Id.* As a result, Dr. Vitols opined that Plaintiff's physical functional capacity level was in the "sedentary capacity range" and noted that the Plaintiff "report[ed] frequent episodes of sickle cell crises with total incapacitation during these periods." *Id*. at 324. Dr. Vitols thus concluded that Plaintiff's "work capabilities and tasks of daily living are affected accordingly." *Id*.

In reviewing his opinion, ALJ Plunkett found Dr. Vitols' opinion that Plaintiff be limited to sedentary work to be "persuasive because he examined [Plaintiff] and his conclusions were

based [on] his own clinical findings and own clinical findings and observations. (Doc. #10-2, *PageID* #52). He pointed out that Dr. Vitols' opinions were "consistent with and supported by the objective medical evidence at the hearing level, which indicates [Plaintiff] can do a diminished level of sedentary work." Overall, ALJ Plunkett found that Dr. Vitols' findings to be "largely consistent with the evidence of record at the hearing level." *Id*. As pointed out by the Commissioner, however, Dr. Vitols never opined on the frequency or severity of Plaintiff's sickle cell attacks. Instead, he merely documented what the Plaintiff reported to him and diagnosed him with sickle cell anemia. In other words, Plaintiff faults the ALJ not with failing to implement a limitation imposed by Dr. Vitols, but with a limitation based on Plaintiff's own subjective complaints to Dr. Vitols.

However, Plaintiff's reliance on his own subjective complaints to support including these limitations in his RFC is unavailing. It is well-settled that an ALJ is not required to accept a plaintiff's subjective complaints but may instead properly consider the credibility of a plaintiff. *Infantado v. Astrue*, 263 F. App'x 469, 475 (6th Cir. 2008) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)). If the ALJ's credibility determinations are explained and enjoy substantial support in the record, the Court is without authority to revisit those determinations. *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007) (declining to disturb the ALJ's credibility determination, stating that: "[w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility" (citation omitted)). *See Beavers v. Sec'y. of Health, Educ. and Welfare*, 577 F.2d 383, 386-87 (6th Cir. 1978).

Here, substantial evidence exists to support ALJ Plunkett's decision not to include those limitations in the RFC. For example, in response to Plaintiff's subjective complaints regarding the severity of his sickle cell anemia and associated symptoms, ALJ Plunkett found that neither

Plaintiff's treatment history, nor his objective medical evidence, demonstrated that this impairment is as severe as Plaintiff alleges. (Doc. #10-2, *PageID* #51). In particular, ALJ Plunkett noted that Plaintiff had been noncompliant with his ulcer treatments, including missed appointments and not taking his recommended folic acid medication. *Id*. (citing Doc. #10-7, *PageID* #439). He also noted that Plaintiff's treatment providers reported significant healing of the ulcers despite this noncompliance. *Id*. (citing Doc. #10-7, *PageID* #s 363, 404, 407, 430, 523). He also pointed out that Plaintiff's clinical exams had documented largely normal findings, including, ambulating without pain or calf tenderness. *Id*. Finally, acknowledging that there were some abnormal reports, including shortness of breath and average to slightly below average hemoglobin counts, ALJ Plunkett found that Plaintiff's most recent report from February 2019 indicated that he had been noncompliant with his recommended folic acid treatment and had no recent hospitalizations. *Id*. (citing Doc. #10-7, *PageID* #s 537; Doc. #10-8). Hence, ALJ Plunkett carefully considered the totality of the evidence, applied the proper standards, and clearly explained his credibility findings. In doing so, he did not find Plaintiff's alleged impairments to be wholly uncredible but, rather, he simply found that they did not support the additional hypothetical limitations advocated by Plaintiff. Under these circumstances, this Court is without authority to disturb that finding.

For these reasons, Plaintiff's statement of error is not well taken.

**IT IS THEREFORE ORDERED THAT**:

1. The ALJ's non-disability decision is affirmed; and
2. The case is terminated on the Court's docket.

December 17, 2021

*s/Peter B. Silvain, Jr.*
Peter B. Silvain, Jr.
United States Magistrate Judge